CYNTHIA HURT, Plaintiff-Appellant, *v.* PERSHING MOBILE HOME SALES, INC., *et al.*, Defendants-Appellees.

Fourth District   No. 15663

· Opinion filed April 25, 1980.

CRAVEN, J., dissenting.

James V. Mancuso, Jr., of Whitley, Suter & Mancuso, of Decatur, for appellant.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (Jerald E. Jackson and Mark Jackson, of counsel), for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Cynthia Hurt, appeals from an order of the circuit court of Macon County entered on August 1, 1979, dismissing with prejudice counts I and II of her second amended complaint against defendants. We have jurisdiction by virtue of a finding, contained in the order of dismissal, that no just reason existed to delay enforcement or appeal of the order. 73 Ill. 2d R. 304(a).

In each count plaintiff sought damages for injuries she received on March 12, 1978, when she put her hand and forearm through the glass in the storm door of a trailer of which she was the lessee. The counts differed only to the extent that count I is directed against defendant Pershing Mobile Home Sales, Inc., and charges them with the obligations of the lessor, while count II is directed against defendant Barding Mobile Home Sales, Inc., and charges them with those obligations. The counts allege that (1) on November 4, 1977, plaintiff and defendants entered into a written lease for the trailer, (2) plaintiff was at all times in the exercise of due care, (3) defendants repaired or paid for all repairs to the trailer during the course of the lease, (4) certain defects in the porch and storm door existed at the time of the execution of the lease, (5) prior and subsequent to the execution of the lease, defendants' agents assured plaintiff on numerous occasions that defendants would repair the defects, (6) defendants negligently failed to repair the defects, and (7) plaintiff's injuries were proximately caused thereby.

The written lease was before the court at the hearing on the motion to dismiss. Paragraph 8 of the lease provided, "The Lessee promises to keep the premises in good condition and repair, ordinary wear and tear excepted, * * *." Paragraph 6 stated:

"The Lessee shall permit the Lessor to have free access to the premises hereby leased for the purpose of inspecting and examining the same in order to make any necessary repairs, in order to see that the terms of this lease agreement are being fulfilled and in order to make arrangements to rent the premises at the termination of this lease agreement and the Lessee promises not to interfere with Lessor's right to do these things."

The issue is whether the complaint set forth a duty upon defendants to make repairs. Section 356 of the Restatement (Second) of Torts (1965) provides that, except as stated in sections 357-362, a lessor of land is not liable to his lessee or others for dangerous conditions of the land which existed when the lessee took possession. Only section 357 is applicable here. It states:

"Where Lessor Contracts to Repair

A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if

(a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and

(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and

(c) the lessor fails to exercise reasonable care to perform his contract." Restatement (Second) of Torts §357 (1965).

The comment to section 357 indicates that the rule stated in the section goes further than most States in imposing liability upon the landlord.

■■ The statement in section 357(a) that the landlord must contract by covenant indicates, of course, that the covenant must be binding upon him. Comment *b* to the section indicates that the covenant must be given for consideration. In the instant case, there is no allegation or indication that the alleged promises of the landlord were either for consideration or otherwise binding. Any oral promise made prior to or contemporaneous with the lease would be directly contrary to the terms of the lease and unenforceable as a matter of substantive law because of the parol evidence rule. (*Mertke v. Kracik* (1969), 122 Ill. App. 2d 347, 259 N.E.2d 328; see Cleary, Handbook of Illinois Evidence §16.5 (2d ed. 1963).) No allegation is made that any promises by the defendants made after the execution of the lease were for consideration, nor is there any allegation of plaintiff's detrimental reliance upon the promises. Counts I and II failed to state a cause of action within the requirements of the applicable provisions of the Restatement (Second) of Torts (1965).

As this court stated in *Forshey v. Johnston* (1971), 132 Ill. App. 2d 1106, 271 N.E.2d 81, the general rule in this State is that a landlord has no duty to repair patent defects in premises unless he has bound himself to do so. An exception to this rule arose from *Kaufman v. Shoe Corporation of America* (1960), 24 Ill. App. 2d 431, 164 N.E.2d 617, where a landlord was held responsible for installing a new heating system to replace one made obsolete by a public utility's discontinuance of a particular type of service. The lease had provided for the tenant to make all repairs. The court deemed this repair to be extraordinary and of a structural nature. See also *Hardy v. Montgomery Ward & Co.* (1971), 131 Ill. App. 2d 1038, 267 N.E.2d 748; *Koenigshofer v. Shumate* (1966), 68 Ill. App. 2d 474, 216 N.E.2d 195.

In *Hardy*, the repair of plastering was held not to be work of a structural nature. The court adopted a definition from Webster's Third International Dictionary (1968), of "structural" as " 'The details of a house consisting of floors, joists, rafters, walls and partition studs, supporting columns, foundations.' " (131 Ill. App. 2d 1038, 1042, 267 N.E.2d 748, 751.) Here, the alleged defects requiring repairs concerned the condition of the door to the trailer and the lack of handrails on the porch. Repairs to these items would not be structural in nature within the meaning of *Hardy* even if the *Kaufman* exception were applied.

Other than *Kaufman*, we are unaware of a case where a landlord was held to have a duty to make repairs when the binding agreement between the parties provided that the tenant would be required to do it. In *Jones v. Chicago Housing Authority* (1978), 59 Ill. App. 3d 138, 140, 376 N.E.2d 26, 28, the opinion did not indicate evidence of any express agreement between a landlord and a tenant as to who was required to make repairs. In affirming a verdict against the landlord for negligence in failure to make repairs to the premises, the court stated that the course of conduct of the landlord in having made repairs in the past "may establish a duty" to do so. The opinion also stated, "We note that defendant did not challenge plaintiff's proof that defendant had a duty to repair." We interpret the rationale of *Jones* to be that in the absence of a showing of an express binding agreement as to who was to make repairs, the course of dealing of the parties may imply the existence of an agreement imposing that duty.

■ We do not agree with plaintiff's contention that the lease provision authorizing defendants to enter the premises to make repairs imposed a duty upon defendants to do so. Under similar circumstances, a provision of this nature was held not to impose such a duty in *Carson v. Weston Hotel Corp.* (1953), 351 Ill. App. 523, 115 N.E.2d 800. In *Alaimo v. DuPont* (1954), 4 Ill. App. 2d 85, 123 N.E.2d 583, relied upon by plaintiff, the lease expressly provided for the landlord to make the repairs in

question. The provision of that lease permitting the landlord to enter to make repairs was significant only because it negated the landlord's contention that his duty arose only when the tenant requested repairs to be made.

The trial court properly determined that counts I and II failed to state a cause of action. Its dismissal of those counts is affirmed, and the cause is remanded for further proceedings.

Affirmed and remanded.

MILLS, P. J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

To avoid what I consider an unfair result, I would reverse the trial court's judgment and remand the cause for a trial on the merits of the first two counts. By mechanically applying the rules regarding consideration and parol evidence to the covenants in this lease, the majority ignores the actual effect of the defendants' conduct and assertions. When the plaintiff signed the lease she was assured, according to her complaint, that the door and porch would be repaired. The majority would exclude those assurances as violating the parol evidence rule. Yet the defendants' subsequent conduct in paying for or making repairs could have only reinforced the plaintiff's belief that the porch and door would also be repaired. I would find that the promises and conduct effectively negated the lease term that ostensibly imposed the burden of repair on the tenant.

I would find consideration for those promises in the plaintiff's signing the lease; the signing and the promising should be viewed as parts of the same transaction. The defendants' following conduct in making repairs makes this parol evidence especially reliable. The lease here was residential, not commercial; the plaintiff heard the promises and was then told to sign the form.

An alternative source of consideration is the plaintiff's reliance on the defendants' oral promises to repair. Although the complaint does not use the word "reliance," paragraph 7 of count I implies that the plaintiff depended on the promises. That paragraph says:

> "That on or about the 4th day of November, 1977, said Plaintiff advised the Defendant, by and through its agents, servants and/or employees, acting within the scope of their agency, service and/or employment, that certain conditions existed in reference to a porch and storm door at the only means of ingress and egress to the trailer located at 3146 Vicki Court, as stated in more specificity in Paragraph 9 hereof and the subparagraphs attendant thereto, and was assured by said agents, servants and/or employees on

numerous occasions, both prior to and subsequent to the execution of said lease, that the defective conditions complained of would in fact be repaired by said lessor, although said repairs were never made."

Section 33 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 33) requires a liberal construction of the pleadings. Reading the magic word "reliance" into this complaint surely does not strain the rule of liberal construction.

The result I recommend is hardly novel or surprising. In *Antonsen v. Bay Ridge Savings Bank* (1944), 292 N.Y. 143, 54 N.E.2d 338, a tenant recovered in tort after showing that she had notified the landlord of the injurious defect, which arose during the term of the lease, and that she had relied on the landlord's assurances that it would be repaired. A similar result was reached in *Noble v. Marx* (1948), 298 N.Y. 106, 81 N.E.2d 40, where the lease contained a clause requiring the tenant to maintain the premises in good repair. The tenant had called to the landlord's attention the defect, a hole in the floor, before signing the lease. Although the evidence was unclear on whether the landlord's agent had promised that the hole would be repaired, the tenant recovered in tort for her personal injuries.

For the foregoing reasons, I respectfully dissent.